MISSISSIPPI VALLEY LIFE INSURANCE CO. *v.* R. H. MORTON.

**Life Insurance Policy—Representations to Procure.**

　　While an insurance company is not bound to pay on a policy that was procured by false representations made by the insured, it is bound when the evidence discloses that such representations were substantially correct and true.

**Evidence.**

　　Close neighbors and friends who have an opportunity to observe a person almost daily are in a better position to state the condition of one's health than those seeing the person infrequently.

APPEAL FROM MARSHALL CIRCUIT COURT.

November 14, 1875.

OPINION BY JUDGE PRYOR:

This is an action by the appellee, Richard H. Morton, upon a pol-

icy of insurance issued by the appellant, the Mississippi Valley Life Insurance Company, upon the life of appellee's wife, Harriet A. Morton, for the sum of twenty-five hundred dollars. To this action upon the policy by the husband, for whose benefit it was made, it is alleged, by way of defense, that her lungs were diseased, and that she had an habitual cough, as well as other diseases prior to and at the date of the application for insurance and issual of the policy; that the statements made by the wife in the application and when the policy was delivered "that she never had inflammation of the lungs, habitual cough, or spitting of blood, were not only untrue, but false and fraudulent; that the statement made in the application that Dr. Brooks was her attending physician was also false, and that the insurance was affected by the agent of the company and the husband of the insured, with a knowledge of all these facts, for the purpose of defrauding the company.

A verdict having been rendered for the appellee, it is now insisted as one of the grounds for reversal that the wife of appellee was diseased with consumption at the date of the insurance, and concealed from the company or its agent such facts connected with the condition of her health as were material to the risks, and if disclosed would have deterred the company from issuing the policy. The proof is not only conclusive, but the fact is conceded that Mrs. Morton, the insured, died of consumption. The statement of her attending physician traces the indirect cause of her death to a cold taken by her after recovering from the measles, that she seems to have had about ten years prior to her illness and death.

The preponderance of the testimony establishes the fact that Mrs. Morton, until a short time prior to her death, was in the enjoyment of excellent health and with a constitution that promised as long a life as any of her female acquaintances of the same age. Neither the members of her family, or those who were her constant companions, anticipated that she was liable to such a disease as consumption, or had any premonitory symptoms of its approach. She married in 1864, and between that date and the time of her death in January, 1872, gave birth to three children, and attended to her household duties without any serious illness or evidences of failing health until a few months prior to her death. The colds she occasionally had were attended with slight coughing, but yielded readily to such mild remedies as are used in such cases, and were never regarded by any one as the incipient stages of a more formidable disease. The members of her own household thus did not know that

she had consumption until her attending physician pronounced her case hopeless. Her husband, a short time before his wife's illness, had been quite sick, and the latter had nursed him almost night and day for the period of fifteen days, and from that time she seems to have manifested much physical weakness and rapidly declined in health. Whether or not the remote cause of her disease was properly attributed to the measles she had in 1862 is involved in much doubt; and the testimony of medical witnesses based upon her physical condition from 1862 until her death rather tends to show that there was sudden inflammation of the lungs from some exciting cause of a later date than January, 1862.

It may have been that she was predisposed to consumption by reason of her illness with measles prior to her marriage, and that the exhaustion in waiting upon her husband only developed it into a fixed and permanent disease, or that she had no predisposition to any such disease, but died from a sudden attack of inflammation of the lungs. Indulging in either theory, the same conclusion must be reached as to the rights of the parties in this controversy.

It is true that there are three witnesses examined by appellant who speak of her emaciated and consumptive condition prior to and even on the day her life was insured, giving her own declarations "that she would live but a short time, and her life was not worth fifteen cents," etc. It is rather singular that the wife of appellee should have made such statements to those who were only her casual acquaintances, and who had no claims upon her confidence, particularly on the day her life had been insured, statements that, if true, forfeited the policy. She had intimate friends in the same town, some of whom lived adjoining her own premises, others living in her own house; and no such communication was even made to them, nor was there any discovery by these intimate friends, from her conduct or otherwise, that she was laboring under any disease. Some ten or eleven witnesses who had known her intimately for many years never discovered that she was deseased until after her husband's illness. The policy of insurance was issued in the 24th of July, 1871, and several witnesses state that they met the wife of appellee at picnics and barbecues in the months of May, June and July, 1871, some of those gatherings a distance of ten miles from where she lived; that she was then a lady of fine appearance, with a ruddy complexion, elastic step and seemingly in the enjoyment of fine health. These statements, in connection with those made by her numerous acquaintances, make it impossible that

her condition should have been such as described by the three witnesses of appellant on or about the time the insurance policy issued. It is also shown by the medical examiner for the company that he made the usual test in order to ascertain if her lungs were diseased, counting the respirations and pulsations. She had a large full and well-developed chest, when unexpanded measured 30½ inches, and expanded measured 33 inches. He applied other tests, and expresses the opinion that it was impossible for her lungs to have been diseased at that time. Dr. Brooks is the only physician who seems to have detected any evidence of consumption upon her prior to her last illness, and his opinion is based, not upon any examination made, but from her general appearance and cough, noticed by him whilst he was attending her husband in his illness that occurred some time after the policy issued.

The necessary and rational conclusion from all the evidence is that neither the husband nor wife made any representation to, or withheld any fact from the agent of the company at the time the application was made and the policy issued, that would have induced the agent to have acted otherwise than to issue the policy, and certainly nothing known by them or either of them that, if developed, would have caused the company or its agent to have declined the risk. She had not contracted the disease in 1862, and the weight of the evidence is that she was sound and healthy at the date of the policy; and there is no stronger or more conclusive proof in the record sustaining this view, than the statement of the medical examiner of the company, who made a close and careful examination of the applicant before the policy issued. The husband was not present when the examination was made, and there is nothing in the record from which it may be inferred that any combination or conspiracy was entered into between the husband and the agent to defraud the company; but on the contrary, the policies were issued upon the importunities of the agent, and not at the solicitation of the appellee; and whilst the character of this agent has been assailed by the appellant, the medical examiner stands, so far as this record shows, unimpeached in his character for professional integrity and moral worth.

It is insisted, however, by counsel for the appellant, that the appellee is estopped from controverting the facts contained in the affidavit of his wife's attending physician as to the origin of the disease, this affidavit having been presented by appellee to the company as a part of the preliminary proof of her death. The statement is "the indirect cause was taking cold after recovering from

measles." The case of *Campbell v. Charter Oak Fire & Marine Insurance Company,* 10 Allen (Mass.) 213, is relied on as establishing this view of the question. Campbell insured his hotel with the company, and by the terms of the charter, it was provided that no burning fluid should be used about the building without the consent of the company indorsed in writing on the policy. The hotel having been destroyed by fire, the insured made affidavit of the loss, stating therein "that the house was usually lighted with burning fluid in lamps." The statement made, instead of negativing that which was made requisite in his preliminary proof of loss by the terms of the policy, expressly admits its existence, and by his own affidavit shows that he has no right of recovery. The court below, in the case noticed, permitted the plaintiff to prove that the affidavits were made upon a mistaken state of facts; and upon an appeal, it was held that although the mistake might have been corrected, the plaintiff should have made an amendatory statement and presented it to the company prior to the institution of his action. He had already done that which, if true, forfeited his right to the insurance money, and fhere was no necessity for the company to make any other defense than appeared in plaintiff's own affidavit. The fact admitted by Campbell was not only material, but concluded his right to recover. Bliss on the law of life insurance, Sec. 259, lays down this rule based upon the opinion in the case of *Campbell v. Charter Oak Fire & Marine Insurance Co.*

The assured is bound by the statements contained in the proof presented by him unless before trial he notifies the company of some error in them. The meaning of this rule is that the facts material to plaintiff's right of recovery, set forth on the preliminary proof, cannot be contradicted without notice of some mistake as to the contents of the affidavit or proof first given the company. In the present case, by the terms of the policy, it was not necessary to negative the fact that the wife died of consumption, habitual cough, or spitting of blood. The policy only requires proof of the death, and certain negative statements that were made, and about which there is no controversy. It is admitted that the insured died from diseased lungs, and that she had measles nine or ten years before the death; but it is denied that she was laboring under any disease at the time the policy was issued, or that the spell of measles affected her general health. All the facts stated in the affidavit are admitted, in effect, on the trial below, except that the deceased had cold after measles, or that the origin of this disease of which she died was from

this cold. It was never admitted or proven in any affidavit that the deceased was laboring under any disease prior to the insurance, and the statement made by the attending physician in his affidavit as to his opinion of the remote cause of her death, could not have misled the appellant, nor was it such a material fact, if true, as barred the appellee's right of recovery, or necessarily affected the issues involved.

The only question presented is, Was the insured diseased at the time of the insurance? There was not even an apparent ground of defense disclosed in the affidavit of the attending physician as to the origin of the disease; it was an unnecessary statement of circumstances, upon which a mere opinion seems to have been based, and if true could not have prevented the recovery or constituted a defense to the action. *Cluff v. Mutual Benefit Life Insurance Co.,* 99 Mass. 317. Nor does it appear in this case that there was any false representation made by the deceased as to who was her attending physician. She had formerly lived in the county of Ballard, but had removed not long prior to the insurance, to the city of Paducah. The physicians who had been practicing in the family for years were living in Ballard, and after the removal to Paducah, Dr. Sanders was the only physician who seems even to have prescribed for her. Dr. Brooks was the family physician, or rather had been employed to attend her husband in his illness. Sanders says that he was not the family physician, and Brooks having been the physician of the husband, the wife, when asked who was her attending physician, responded "Dr. Brooks." We think there is no fraud or misrepresentation in this statement. She seems at that time to have had no medical attendant, and Dr. Brooks was as much the physician of the family as any other member of the profession in the city.

The court instructed the jury at defendant's instance, that if Mrs. Morton was diseased at the date of the application for insurance they must find for the defendant and further instructed the jury that if Mrs. Morton or her husband failed to disclose any material fact relative to the condition of her health then known to either of them at the date of the application, they must find for the defendant; also, that the printed or written application for the insurance is a warranty, and if they believe that any of the answers therein made are untrue, they must find for the defendant. The jury was again told that it was the duty of Mrs. Morton and her husband to have disclosed any material fact relating to the condition of her health prior to the date of the insurance. All their instructions were as

favorable to the appellant as they should have been, and embraced the whole law of the case. It is not error for the court to refuse to instruct the jury to make a special finding. The submission of such special issues being altogether within the discretion of the court. We perceive no error in the record prejudicial to the appellant, and the judgment is therefore *affirmed*.

*R. K. Williams, J. C. Gilbert, for appellant.*
*Marshall & Bloomfield, for appellee.*